Go ahead. Good morning, Your Honors. Doug Keller on behalf of Mr. Nunez. The prosecutor below did not determine in good faith that Mr. Nunez was in criminal history category 6. According to the prosecutor, he'd initially reached that determination with the hopes and anticipation of conviction documents showing up that would substantiate the PSR. But of course, those conviction documents never showed up. So rather than change his determination that he couldn't meet his burden of proof, the prosecutor stuck by his claim that Mr. Nunez was in criminal history category 6. That's simply not good faith. Well, he said he believed that to be the case. The prosecutor repeatedly said he believed that to be the case. Right. He certainly affirmed he had a belief. I just don't think it was a good faith belief based on what he'd otherwise said. Well, it's the question whether it's a good he believed. It said what he determined. And doesn't determine have some notion that you actually have a basis for it and that you've done an investigation, that you have something that's provable? In other words, for some reason, all the briefing assumes that the agreement said whatever he thinks. But that isn't what it says. It says what he determined. That's right, Your Honor. That's exactly the contrary of my briefing. My view is that language must be read in context in which it was made, which is that this was made in the context of a court proceeding. And so the prosecutor couldn't just have some abstract belief, but instead he had to know that there was sufficient evidence that was brought into court that would meet his burden of proof. Does your argument depend on the PSR being insufficient? So in other words, if we determined that the court can properly consider what the probation officer's then doesn't that flow from that, that the prosecutor can in good faith rely on that? Well, only if the probation officer had himself sufficient evidence. And here, the probation officer didn't. That's what I'm asking you. So your argument rises and falls on whether the probation had sufficient evidence, right? Not entirely. I think mostly the distinction I'd want to draw is that at the sentencing hearing, the prosecutor claimed he was simply relying on his hope and anticipation of conviction documents showing up. And so I think what happened at the sentencing hearing is the probation officer mentioned for the first time a reference to the CII. Now, the prosecutor himself never relied on that or claimed he relied on that. What's the CII, please? I don't know. It's the CII. And I don't know either. Well, the CII, of course, is just an identifying number that links to a lot of different law enforcement databases. And I think that's why ultimately it's not nearly sufficient. It's unclear what that is, what it references to, and the underlying reliability of what it's linked to. And I think at the end of the day, that's why even the prosecutor himself didn't discuss it. The mere reference of a CII is obviously not sufficient evidence to prove it. I'm looking at the addendum that's prepared by the probation officer responding to the objection that the defendant filed on criminal history points. And the probation officer said that during the investigation, the officer, the probation officer obtained Nunez's parole information that's reflected in the PSR during a telephone call with CDC. There's no indication that challenging the accuracy of that date. Why isn't that the end of the story? Well, there's no dispute that that conversation took place. But I don't think that the mere fact that some unnamed third party claimed that, unnamed CDC official claimed that my client's vote is sufficient. And I think that's why the prosecutor himself didn't mention that at the sentencing hearing. He knew that once the PSR was challenged, typically what happens in these cases is that the probation officer then produces documents. And those documents either prove or abut what he said. The quirk in this case obviously was they never got the documents at all. They couldn't find them. So I don't think the mere fact that the probation officer spoke to some unnamed third party, that that unnamed third party doesn't give the district court a basis to judge the reliability of the information the probation officer is relying on. Can I ask a more global question? What exactly is it that your client will succeed in getting if he prevails here? Are you trying to vacate the plea or appeal something about it? Or what is it that you're trying to accomplish? If this court rules in client's favor, then this court would have to remand to a new judge for a new sentencing hearing. He's not attempting to vacate his plea. He's attempting to have a new sentencing hearing where the government will abide by its promises in the plea agreement. And a new sentencing, a new judge because the government didn't abide by its plea? Because the breach of the plea agreement under Sansevella? Absolutely, Your Honors. Okay. All right. If the court has no further questions, I'll reserve the rest of my time. Thank you. May it please the court. Ajay Krishnamurthy for the United States. I understand the court's earlier point about the determined by language in a plea agreement. And I agree that it would have been a better practice to produce a documented sentencing. Nonetheless, the prosecutor's determination was not made in bad faith. The precise... The bad faith thing kind of comes out of left field. And I am more comfortable with asking, but with relying on the language of the plea agreement, which says that he determines something. Determine something doesn't mean something that I just believe. It has, in the context of a legal proceeding, doesn't it have some context, i.e. something that I could go to a judge on and in good faith argue was the case? I mean, that I have enough evidence to propound it? I agree, Your Honor. And this is where the precise nature of Mr. Nunez's objection below is important. He never claimed below that the PSR was inaccurate. He never claimed that he was not in custody in 2001 or produced evidence to the contrary. But he claimed that it wasn't proven. That's correct. And the district court didn't accept it as proven. The district court said, I think I have to take this as a criminal history five. That is correct. Is that kind of having it both ways? You're trying to have it both ways. You didn't prove it up. And the district court recognized that it wasn't proven up. And bad faith, I'm not sure why you're focusing on bad faith given our history here, our case law, United States v. Johnson, United States v. Camper. Those weren't bad faith errors. There were cases where there had been a plea agreement, totally understandable, negotiated by one prosecutor, a different prosecutor winds up in court for whatever reason and makes a mistake. Nevertheless, in those cases, the case law is pretty clear that those are instances where the court considered that the plea agreement was breached. And then under Santabello, this is quite an extreme result of having to remand for resentencing before a different district court judge. So given that case law history that you have to contend with, why are you focusing so much on good faith, bad faith? Your Honor, this court has repeatedly held that the government can sustain its burden of proof with respect to a criminal history score on the basis of the PSR alone over a defendant's objection without the underlying document. But you didn't. The district court didn't take it. The district court said this has to be treated as a five. Or am I missing a place in the record? No, that is what the district court found. But under this court's precedent, the district court has very wide discretion in determining facts related to sentencing. But under this court's precedent, that would have been a legally sufficient basis to overrule that objection. Well, how can that be? Wait a minute. The PSR, if challenged, I mean, it doesn't have to be challenged on the basis that it's factually incorrect. Can it be challenged on the basis that it doesn't have adequate evidence of what it's saying? And that's what happened here. So the PSR isn't adequate just because it's there. It has to be adequate because it's adequate, because it has some basis for what it's or an adequate basis for what it's saying. And here, the judge determined that it didn't. That is correct, Your Honor. But this was the exact situation in United States v. Marin Cuevas, which is cited in the briefs, as well as that rule was reiterated in the United States v. Romero Rendon. And the United States... Wait, can you give me that? United States versus... The first case I mentioned was the United States v. Marin Cuevas. Yes. The second case was the United States v. Romero Rendon. And the third case is 220 F. 3rd, 1159. Thank you. Your argument, counsel, is that under Romero Rendon and Marin Cuevas, if a district judge had accepted the probation officer's calculation of criminal history category points, that would be well within the district court's discretion. I agree. Right? So just because this district court rejected that, it doesn't necessarily lead to the conclusion that the government therefore acted in bad faith by relying on the same PSR information. Is that the gist of your argument? That is correct. In this case, the district court exercised its discretion to sustain that objection. But under this court's law, it could have gone the other way. And based on that, the government had a legally sufficient basis to believe that Mr. Nunez was, in fact, in criminal history category 6. And that triggers the appellate waiver provision, the plea agreement? That was the nature of the dispute below, yes. I'd like to address one other factual point, which is the rap sheet summary that's referenced in the briefs. The rap sheet summary is a preliminary criminal history that's prepared at the time the defense arrested. It's not as thorough as the criminal history that's prepared by the probation officer and relied on by all the parties at sentencing. And that's apparent from the face of the documents themselves. For example, Mr. Nunez violated the terms of his 2002 conviction, 2002 supervised release when he returned in 2004. That's reflected in the PSR and was never challenged. And yet, that's not in the rap sheet summary. Well, let me go back to the earlier point. In Marin Cuevas, as I understand it, the probation officer said he'd seen the documents. He just didn't provide them. And the holding was that the district court could rely on the probation officer's representation as to what documents he'd seen said. But he didn't see the documents. That's correct. But at sentencing, one probation officer said that was the information that's reflected in the CII, which stands for the criminal information identification number. And it's commonly used to refer to the electronic databases in which a person's criminal history is scored. And in the addendum to the PSR, a different probation officer said that was also the information that he obtained when he contacted an employee from the California Department of Corrections. So while the probation officer hadn't seen those documents in this case, that is not a dispositive distinction. Counsel, in the United States, there's Marin Cuevas. That was an unchallenged PSR, right? Romero Rendon just talks about the fact that the district court could have relied upon. That it would have been within the court's discretion to have relied upon this, right? Correct. Although unchallenged in Marin Cuevas means the same thing as it meant here. The PSR was objected to. It was just that there was no evidence on the other side of the ledger from the PSR and the probation officer. Yes, I understand. But I still think that you don't have case law right on point. Is there something else I'm missing that you want to call my attention to? Because I'm happy to look at whatever you want me to look at. The third case that reiterates that rule is the United States versus Felix, which again is a similar situation in which the PSR is objected to. But like here, a defendant never claimed that the PSR was in fact inaccurate. If the court doesn't have any further questions. Thank you. Just two brief points, Your Honor. First, with respect to Marin Cuevas, in addition to the points Judge Berzon made about the distinction between this case and that case, I think an important fact in that case was the underlying documents were fingerprint matched. So there was a basis to judge the reliability. Here, we don't know what the underlying reliability of this database is, even if it's a database or what the reference is to. Second, with respect to Judge Nguyen, your concerns about whether the district court could have in its discretion agreed with the government's position in this case, I don't think there's a basis for any court to have done that. At the end of the day, the only basis... Well, what I go back to is just the basic law on the court's determination as to what evidence to accept. And as I understand it, the district court at the time of sentencing can really consider anything that has sufficient distinction of reliability. And we review that determination for views of discretion. So one judge can look at the same record, setting aside the specifics of this case and say, well, I think that's sufficiently reliable. The probation officer's research in coming up with the points is reliable. Another judge says, oh, I would have wanted to see the underlying record, so I'm going to sustain the objection. That doesn't necessarily lead to a determination that the government acts in bad faith, though, does it? Because otherwise, any time a district court sort of rejects the government's determination and reading of the record, the government is therefore then precluded from arguing in good faith in a situation like this where there's really no agreement at all as to criminal history. I agree with almost everything you said except how it applies to this case. In this case, the district court judge had no basis to determine the reliability of what the probation officer was relying on. So once Mr. Nolaisa... But that's typically the case, counsel. That's typical. That at least is not unusual. It's not unusual. It is unusual. It seems to me your stronger point is the district court ultimately didn't accept it. He said this is a five, not a six. I agree with that. But I also say what is unusual is once typically the defendant challenges the PSR, then the PSR itself is no evidence of anything. The PSR is only as good as the information going into it. And so here, the only information we had going into the PSR was a conversation with an unnamed CDC official and a vague reference to a CII. Now, the district court has a lot of discretion, but it still needs a basis to judge the reliability of that information. And there simply is no basis in this record. In addition to that, that evidence, even if you would consider it reliable, doesn't add up to a preponderance of the evidence, even deferring to the district court judge. If the court has no further questions. No. Thank you, Your Honor. Thank you for your argument. The next case on the calendar is 15-555.
judges: Berzon, Christen, Nguyen